UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

----------

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ROSALIO OCON-FIERRO,

    Defendant.

_____/

No. 1:09-CR-069

Hon.  Robert Holmes Bell
     District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Rosalio Ocon-Fierro and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>The Defendant Agrees to Plead Guilty</u>. In the Western District of Michigan, the Defendant, Rosalio Ocon-Fierro, agrees to plead guilty to the sole offense charged in the Indictment: Possession with intent to distribute five hundred (500) grams or more of a mixture or substance containing methamphetamine, in violation of Title 21, United States Code, Section 841(a).

2.     <u>The Defendant Understands this Crime</u>. In order for the Defendant to be guilty of this count, the following must be true:

    A.     On March 11, 2009, he knowingly and intentionally possessed a controlled substance in Kent County, Michigan;

    B.     At the time he possessed the controlled substance, he intended to distribute it to another person; and

    C.     the controlled substance he possessed was more than 500 grams of a mixture or substance containing methamphetamine.

The Defendant is pleading guilty because he is guilty of the charge described above.

3.   **The Defendant Understands the Penalty.**  The defendant realizes that this offense is punishable by a minimum term of ten (10) years' imprisonment; a maximum term of LIFE imprisonment, a fine of up to $4,000,000; a period of at least five (5) years of supervised release; and a mandatory $100 special assessment. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4.   **Stipulations.**  The Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts and law which need not be proven at the time of the plea or sentencing:

On March 11, 2009, acting upon informant information[1] that was verified by subsequent police investigation, officers of the Kent Area Narcotics Team (KANET) and the Drug Enforcement Administration (DEA) set up surveillance on Interstate 196 in Ottawa and Kent Counties, Michigan, for the purpose of locating a white Dodge Dakota bearing Illinois registration plate number 34833R. The law enforcement officers had probable cause to believe that the vehicle would contain approximately three (3) pounds of methamphetamine in a secret compartment and that it would be driven by Cirilo Reyes.

---

[1] The informant had reported previous purchases of kilogram quantities of cocaine from the defendant. However, the informant wishes to have his/her identity protected and is not currently willing to testify. In order to protect the identity of the informant, the government will not attribute prior cocaine trafficking to the defendant for purposes of computing the sentencing guidelines.

2

The KANET and DEA officers located the vehicle on the interstate and observed several minor traffic violations. As the vehicle passed from Ottawa County into Kent County, the officers stopped the vehicle and identified the driver as Cirilo Reyes. (Days later a fingerprint comparison resulted in law enforcement officers learning that Mr. Reyes's true name was Rosalio Ocon-Fierro). Mr.Ocon-Fierro granted consent to search the vehicle. Additionally, a K-9 unit was on the scene and a drug detection dog with a proven track record alerted to the interior of the vehicle.

Rosalio Ocon-Fierro was advised of *Miranda* warnings and agreed to speak with the officers. Mr. Ocon-Fierro identified himself as Cirilo Reyes and stated he lived in Belvedere, Illinois. When confronted with DEA intelligence that he actually lived in Rockford, Illinois, Mr. Ocon-Fierro confirmed the intelligence report was accurate. Mr. Ocon-Fierro told DEA agents that he resided at 816 Arnold Avenue in Rockford, Illinois, and that he had an additional 300 grams of methamphetamine in his bedroom. Mr. Ocon-Fierro signed a consent to search form that was forwarded to DEA agents in Illinois. Those DEA agents recovered 300 grams of methamphetamine, five (5) ounces of heroin and a sawed-off shotgun from the residence. Mr. Ocon-Fierro then showed a DEA Task Force agent how to access a hidden compartment within the vehicle, which housed 1,332 grams of a mixture containing methamphetamine.

Mr. Ocon-Fierro admitted that he intended to sell the methamphetamine found in his vehicle to a customer in Grand Rapids, Michigan, for $18,000 per pound. Mr. Ocon-Fierro also admitted that he had five (5) ounces of heroin in his home that he had purchased a few days earlier in Chicago

For purposes of computing the Sentencing Guidelines, the parties agree that the total amount of methamphetamine to be attributed to Mr. Ocon-Fierro would be 1,632 grams (1,332 grams seized from the vehicle and 300 grams seized from his residence). The defendant also possessed approximately 5 ounces of heroin. The parties agree that the drug quantities involved place the defendant at a Base Offense Level 34 under the Sentencing Guidelines. The parties further agree that the defendant was not a leader, organizer or supervisor in the offense of conviction.

5. **Additional Promises Made by the Defendant**. The Defendant agrees to fully cooperate with the United States Department of Justice, the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the charges contained in this case as well as the investigation of crimes over which they have actual or apparent jurisdiction. The Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning the Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in the Defendant's possession or under the Defendant's control, including, but not limited to, objects, documents, and photographs. The Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which the Defendant should reasonably know will assist in the investigation of other criminal activity. The Defendant will neither commit nor assist others in the commission of any criminal offense during the course of his cooperation

4

with the United States. The Defendant will submit to polygraph examination(s) upon request. The Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which the Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

6. <u>Advisory Paragraph Relative to the Legal Possibility of Substantial Assistance Motions</u>. The Defendant is fully aware of the legal possibilities for sentence reductions contained in USSG § 5K1.1 and Federal Rule of Criminal Procedure 35(b). The Defendant fully understands that such motions for sentence reductions may be made, pursuant to law, if, and only if, the Defendant fully cooperates with the Government <u>and</u> materially and substantially assists the Government in the investigation and/or prosecution of others. The Defendant fully understands that the Government makes no promise to file either such motion; but, rather, will evaluate the Defendant's assistance to the Government in the prosecution and investigation of others to determine whether or not such a motion should be filed in the Government's opinion. The Government retains complete discretion with regard to its decision as to whether or not to file any such motion and will consider the fact that no supplemental information was filed as part of this agreement, thus sparing the defendant significant prison time already. Additionally, the Defendant understands that, even if such a motion is filed, the Court has complete discretion to grant or deny such a motion; and, furthermore, should the Court grant such a motion, it is then within the discretion of the Court to determine how much of a sentence reduction the Defendant is to receive based upon the type and extent of the Defendant's substantial assistance to the

Government in the prosecution of others. This paragraph is merely advisory, is not part of any bargained-for exchange, and gives the Defendant no legal or contractual rights of any kind to any motion for a sentence reduction.

7. The United States Attorney's Office Agrees.

A. to bring no further charges in the Western District of Michigan arising out of the conduct underlying the indictment;

B. that information provided by the Defendant through Defendant's proffer(s) will not be used by the Government to enhance the Defendant's sentence, in accordance with Sentencing Guidelines §1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s). It is expressly understood, however, that such information may be used by the Government at sentencing if the Defendant takes a position at sentencing that contradicts information provided by the Defendant pursuant to this agreement or any proffer agreement.

8. The Sentencing Guidelines Apply. The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum

[and minimum] penalties described elsewhere in this Agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

9. **There is No Agreement About the Final Sentencing Guidelines Range**. The Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range other than as implicated by the stipulations in paragraph 4 above. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

10. **Waiver of Constitutional Rights**. By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against the Defendant.

      d. The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

      e. The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

    11.    <u>No Waiver of Appeal or Collateral Attack.</u> The Defendant does NOT waive his right to appeal or collaterally attack his sentence or conviction.

    12.    <u>The Court is not a Party to this Agreement</u>. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

    13.    <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This

agreement applies only to crimes committed by the Defendant. This agreement does not apply to any pending forfeiture proceedings, and shall not preclude any past, present, or future civil or forfeiture actions.

14. <u>Consequences of Breach</u>. If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

15. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

Respectfully submitted,

DONALD A. DAVIS
United States Attorney

_5-11-09_____                   _/s/ Mark V. Courtade_____
Date                                     MARK V. COURTADE
                                         Assistant United States Attorney

 I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Date _5-08-09_____                        _/s/ Rosalio Ocon-Fierro_____
                                          ROSALIO OCON-FIERRO
                                          Defendant

 I am Rosalio Ocon-Fierro's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date _5/8/09_____                         _/s/ Lawrence J. Phelan_____
                                          LAWRENCE J. PHELAN
                                          Attorney for Defendant

10