```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

_____

UNITED STATES OF AMERICA,

        Plaintiff,

   v.                                                  File No. 1:09-CR-69

ROSALIO OCON-FIERRO,

        Defendant.
_____/


<u>Sentencing</u>

Before

       THE HONORABLE ROBERT HOLMES BELL
          United States District Judge
            September 22, 2009


<u>APPEARANCES</u>

| | |
|---|---|
| MARK V. COURTADE | LAWRENCE J. PHELAN |
| Assistant U.S. Attorney | 200 N. Division Ave. |
| P.O. Box 208 | Grand Rapids, MI 49503 |
| Grand Rapids, MI 49501 | Attorney for Defendant |
| Attorney for Plaintiff | |

Also Present:  Mauricio Fernandez de Cordova, Interpreter


Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                      Grand Rapids, Michigan
 2                                      September 22, 2009
 3                                      8:52 a.m.
 4                              -   -   -
 5
 6                        P R O C E E D I N G S
 7
 8            THE COURT:  You may be seated.  Good morning.
 9            This is the matter of United States v. Rosalio
10   Ocon-Fierro.  In this matter I believe we have Mr. Mauricio de
11   Cordova as the interpreter.
12            Mr. Cordova, do you swear that you will carefully
13   and faithfully interpret this matter to the best of your
14   ability on behalf of Mr. Ocon-Fierro?
15            THE INTERPRETER:  I do, Your Honor.
16            THE COURT:  Very well.  A plea was tendered on May
17   11th with Mr. Courtade representing the United States
18   Attorney's Office, Mr. Phelan representing by court
19   appointment Mr. Ocon-Fierro.  The indictment charges
20   possession with intent to distribute 500 grams or more of
21   methamphetamine contrary to 21 United States Code 841(a)(1)
22   and 841(b)(1)(A)(viii).  In this matter the plea agreement
23   that was tendered contemporaneous with the plea is accepted,
24   the Court finding the charges pled to adequately reflect the
25   seriousness of the actual offense behavior.
```

1                Mr. Hoffman has prepared a presentence report of
2    some 18 pages and then has given the Court and the parties a
3    supplemental addendum to the presentence report of some three
4    pages which concerns itself with various subsequent -- this
5    subsequent memorandum with various arrests and criminal
6    behavior that has occurred randomly throughout the last looks
7    like 25 years.  Any additions, corrections or deletions for
8    the record at this time, Mr. Courtade?
9                MR. COURTADE:  None, Your Honor.
10               THE COURT:  Any additions or corrections for the
11   record at this time from your perspective and your client's
12   perspective, Mr. Phelan?
13               MR. PHELAN:  Yes, Your Honor.  May it please the
14   Court.  I just have a couple questions, I think.
15               I got, like you, the subsequent addendum on the
16   arrests.  I just got it this morning through no fault of Mr.
17   Hoffman, and I was going over it with my client.  There are a
18   couple questions I have on a couple of the arrests and maybe
19   the convictions.
20               I have what appears or purports to be police
21   reports.  One police report has allegedly the defendant's
22   birth date as August 30, '56, which is his birth date.  The
23   next police report on a different incident has September 30th,
24   1994 -- or 1954, and then they have different descriptions of
25   the person.  One's five-four, one's five-five; one's 178,

```
 1   one's 185.
 2          So I just have some questions on it, Your Honor.  I
 3   went over it with my client.  They're so old, I haven't -- I
 4   can't tell the Court whether in fact some of these are him or
 5   not.  I guess that's what I'm saying.
 6          THE COURT:  He has no memory, you mean, or he's
 7   unable to recall or --
 8          MR. PHELAN:  Well, I think -- I'm not sure, Your
 9   Honor.  I just haven't had time to go over these with him.
10          THE COURT:  Do you want another five minutes?
11          MR. PHELAN:  Well, that would probably be helpful if
12   I could just have a couple minutes to go over it with him.
13          THE COURT:  Very well.  We'll stand recessed for
14   awhile while you go over those with him.
15   (Proceedings recessed at 8:55 a.m.; reconvened at 9:08 a.m.)
16          THE COURT:  Back on the record.  Mr. Phelan?
17          MR. PHELAN:  Yes, Your Honor.  May it please the
18   Court.
19          On Paragraph 1, date of arrest January 19, 1981, we
20   object to that one, Your Honor.  In the police report in what
21   purports to be the corresponding police report, the date of
22   the defendant's date of birth is September 30, '54, and then
23   the arrestee is Ocon-Rosalio.  Below that scratched out is
24   Andres.  He does have a brother named Andres, Your Honor,
25   who's a couple years older than he is.  So there may have been
```

1   a confusion with that, but my client has no memory of that
2   one, Your Honor.
3           And then Paragraph 2, we have no problems with
4   that, Your Honor.  We do not object to that one.  Do not
5   object to Paragraph 3.
6           Do object to Paragraphs 4 and 5.  I've talked with
7   my client.  He has no memory of being arrested in 1980 when he
8   was 23 for carrying a -- or possession of a firearm in public,
9   or in Paragraph 5, 1980 when he was 24 for traffic offenses,
10  one of which appears to be operating while intoxicated.  I
11  haven't seen any -- the packet I've gotten, Your Honor, does
12  not contain any documentation to support those arrests, Your
13  Honor.
14          THE COURT:  Very well.  Your objections are so
15  noted.  Okay.
16          Mr. Ocon-Fierro, have you had an opportunity to
17  discuss this presentence report with your attorney in this
18  matter?
19          DEFENDANT OCON-FIERRO:  Yes, I have, Your Honor.
20          THE COURT:  Are you satisfied with his
21  representations of you?
22          DEFENDANT OCON-FIERRO:  Yes, I am, Your Honor.
23          THE COURT:  Very well.  I believe counsel has a
24  motion for downward departure.  We can take that up in part of
25  the allocution.  Is there anything else that the Court should

```
 1   take up, Mr. Courtade, before proceeding with allocution?
 2            MR. COURTADE:  Your Honor, you indicated that you
 3   noted the objection of the one in Paragraph 1 of the
 4   supplement.  I would join in the defendant's objection to you
 5   considering that, just for the record, because there's a
 6   different driver's license number, date of birth, and a name
 7   in the report that indicates it's probably the defendant's
 8   brother.  Other than that I have nothing else.
 9            THE COURT:  Very well.  Very well.
10            You may come forward with your client and the Court
11   will hear remarks in allocution and your downward departure
12   issues, Mr. Phelan.
13            MR. PHELAN:  Thank you, Your Honor.  May it please
14   the Court.  A couple of positive points I would like to point
15   out to the Court, Your Honor, if it please the Court.
16            First and foremost, it's been a pleasure to
17   represent Mr. Ocon-Fierro.  He has been respectful to me and
18   respectful to the agents and he has listened to my advice.  I
19   think most importantly in this case, Your Honor, when
20   arrested, he cooperated right away with law enforcement,
21   didn't hide anything.  In fact, he told the police officers
22   that he had further amounts of illegal substances back at his
23   home in Rockford and gave them consent to go and search and
24   retrieve those items.  He's proffered, Your Honor, with the
25   agents, and I would respectfully state to the Court that in my
```

```
 1   opinion, anyway, he's accepted responsibility for his actions
 2   from the very beginning.
 3            Those all, Your Honor, kind of coincide with my
 4   motion for a variance.  I would -- and I've attempted to
 5   highlight those in my motion for a variance, downward
 6   variance, and would adopt those arguments without further
 7   argument, Your Honor.  Thank you very much.
 8            THE COURT:  Okay.  Thank you.
 9            Mr. Ocon-Fierro, is there anything you would wish to
10   say?
11            DEFENDANT OCON-FIERRO:  Yes, Your Honor.
12            Your Honor, more than 30 years ago when I arrived in
13   this beautiful country, the United States of America, this
14   country gave me an opportunity of living better life than the
15   way I was living down in Mexico, and I will never imagine
16   myself in a situation like this.  I never even wanted to cause
17   any harm to this country or either to its society.  But I made
18   a very wrong decision getting involved in drugs, and I'm very
19   sorry for what I did and I regret it very much.
20            I also know that I deserve to be punished, and I'm
21   ready to face the consequences.  Thank you, Your Honor.
22            THE COURT:  Thank you.  Thank you.
23            Mr. Courtade?
24            MR. COURTADE:  Your Honor, the defendant didn't just
25   stumble into a one-time drug deal here.  He had a rather
```

1  professionally-installed trap device placed into his car for a
2  couple of years before the police arrested him with this great
3  amount of methamphetamine.  The defendant had been involved in
4  selling drugs as a way of life for several years, and I think
5  the sentence ought to reflect that.
6              THE COURT:  This matter carries, thank you, an
7  adjusted offense level of 33 and a criminal history level of
8  I.  This Court would respectfully deny a downward variance or
9  departure for the following reasons.
10             While accurately scored as a criminal history level
11 of I, that criminal history level would appear to be assigned
12 by virtue of the fact that there has been little or no contact
13 in terms of criminal convictions of Mr. Ocon-Fierro in the
14 last ten years.  However, one has to go back in his adult
15 years and look at the behavior that occurred in 1991 and a
16 random arrest in 1993 which is Paragraph 51, which
17 coincidentally is a drug subject matter, and look at the
18 nature of this particular behavior, and I concur with the
19 government.  The Court was shocked to find that two years
20 prior to this particular transportation of methamphetamine to
21 Grand Rapids, this particular vehicle of which Mr. Ocon-Fierro
22 had custody, control and ownership had a particular secret
23 compartment, if you will, built into it.
24             Now, normally one doesn't have compartments built
25 into the rear quarter panels of a pickup truck unless one is

1  doing something illegal.  There's plenty of room to store
2  things in a truck like this.  One doesn't have to hollow out
3  parts inside the vehicle unless one's engaging in nefarious
4  and illegal activities and must ready themselves for that
5  purpose, which seems to be exactly what happened in this
6  particular case.
7              As part of the nature and circumstances of this
8  offense, this Court finds that a sentence sufficient to comply
9  with the purposes of Section 3553(a), but not greater than
10 necessary causes one to look not only at the hidden
11 compartment and the rather immense quantity of ice, as it's
12 called, and a confidential informant indicating he wanted to
13 get cocaine, but the defendant stated he was out of cocaine,
14 but could supply pounds of ice; that is, pure methamphetamine,
15 for $18,000 a pound, as well as multiple ounces of black tar
16 heroin.  Therefore, CI ordered three pounds of methamphetamine
17 and it was to be -- it was brought into the state of
18 Michigan.
19              At the arrest, interestingly, Mr. Fierro says his
20 name is Cirilo Reyes, and that ruse is uncovered, but clearly
21 is a very troublesome issue, giving the wrong name.  All his
22 employment that he's given here for the last looks like almost
23 ten years is unverified.  None of it's verified.  And it's all
24 working for this guy, working for that guy, doing this, doing
25 that construction-wise.

1        And then a sawed-off shotgun.  You don't go bird
2   hunting with a sawed-off shotgun.  You don't go to -- you
3   don't keep it as a collector's item if you saw the barrel off
4   and take the stock off it, most of the stock off it.
5        So therefore, the Court finds that the nature and
6   circumstances of this offense are troubling.  The Court finds
7   that the criminal history level of I does not truly represent
8   Mr. Ocon-Fierro as the Court finds him here as a 53-year-old
9   adult in the United States.  The Court finds that he should be
10  looked at as a person who has a long history, in and out,
11  perhaps, of contact with controlled substances and their
12  deliveries and their distributions, huge quantities, markedly
13  so.
14       This is a serious offense.  Total lack of respect
15  for law.  A just punishment and an adequate deterrence and a
16  protection to the public this Court believes is essential in
17  this matter.
18       This Court finds that a sentence near the bottom of
19  the so-called guidelines which this Court believes fairly
20  accurately represent this particular activity is a stern
21  sentence, but this is behavior that this Court cannot
22  countenance under any circumstances.  Now, the argument is
23  made here, well, he proffered and he was truthful.  Well, he
24  gave the wrong name when they arrested him.  Of course, Mr.
25  Ocon-Fierro is not stupid.  When arrested, finally he decided

1   that it was time to kind of disclose what he was doing. But
2   prior to that with a hidden compartment, giving the wrong
3   name, one can only conclude he was expecting to skate, and he
4   didn't skate this time.
5           Therefore, the Court finds that a sentence of 144
6   months or 12 years in the custody of the Federal Bureau of
7   Prisons with credit given for time served since his arrest on
8   March 11th of this year will be a sufficient sentence to not
9   only comply with the requirements of the federal statute here,
10  but be proportional to other persons who have been and are
11  similarly situated sentencing-wise.
12          The recommendations the Court would give is three.
13  One is that Mr. Ocon-Fierro receive immediate attention for
14  diabetes and he be given appropriate medication and he be in
15  fact given a physical for purposes of determining the extent
16  of medications that can be provided to him in that regard with
17  a diet and other such matters to assist him in keeping the
18  proper level of sugar in his body.
19          Secondly, that Mr. Ocon-Fierro be evaluated for
20  substance abuse treatment in this case.
21          Thirdly, that the question of deportation be
22  resolved as soon as possible. Apparently he came here and at
23  certain points of his life he has been here apparently with
24  some permission, but apparently at this juncture in his life
25  he does not have the status to be able to stay here. So that

```
 1    deportation issue needs to be resolved by ICE as soon as
 2    possible.
 3              A five-year supervised release period is given with
 4    the standard conditions of reporting and remaining law-abiding
 5    with no alcohol, drugs or guns, and with gainful employment,
 6    but not to be in the United States without permission of the
 7    United States and not without lawful status.
 8              A fine will be waived in this matter due to the
 9    circumstances.  A mandatory special assessment of $100 will be
10    made in this matter.
11              Any legal objection to the sentence being imposed,
12    Mr. Courtade?
13              MR. COURTADE:  No, Your Honor.
14              THE COURT:  Mr. Phelan?
15              MR. PHELAN:  None.  That's already been put on the
16    record, Your Honor.
17              THE COURT:  You have a right of appeal of this
18    sentence.  You have ten days within which to file this
19    appeal.  Those forms being provided to you, Mr. Ocon-Fierro,
20    would need to be filled in in this matter.  You are remanded
21    to the federal marshal for execution of this sentence.
22              The Court wishes to thank you, Mr. Phelan, for your
23    able representation of Mr. Ocon-Fierro throughout this matter.
24              MR. PHELAN:  Thank you, Your Honor.
25              THE COURT:  Thank you, Mr. Cordova.
```

```
 1              THE INTERPRETER:  You're welcome, Your Honor.
 2              THE COURT:  That's all.
 3                  (Proceedings concluded at 9:24 a.m.)
 4
 5                              *   *   *
 6
 7                         CERTIFICATE OF REPORTER
 8
 9              I, Kevin W. Gaugier, Official Court Reporter for the
10    United States District Court for the Western District of
11    Michigan, appointed pursuant to the provisions of Title 28,
12    United States Code, Section 753, do hereby certify that the
13    foregoing is a true and correct transcript of the proceedings
14    had in the within-entitled and numbered cause on the date
15    hereinbefore set forth.
16              I do further certify that the foregoing transcript
17    was prepared by me.
18
19
20
21    /s/  Kevin W. Gaugier
22    Kevin W. Gaugier, CSR-3065
      U.S. District Court Reporter
23    110 Michigan N.W.
      622 Federal Building
24    Grand Rapids, MI 49503
25
```